**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BLAKE TAYLOR and MARK FLOOD, husband and wife,<br><br>   Plaintiffs,<br><br>vs.<br><br>ALLIED VAN LINES; SIRVA, INC. and JANE DOES 1-X; and XYZ CORPORATIONS 1-10,<br><br>   Defendants. | No. CV-08-1218-PHX-GMS<br><br>**ORDER** |

Pending before the Court is the Motion to Dismiss of Defendants Allied Van Lines ("Allied") and SIRVA, Inc. ("SIRVA"). (Dkt. # 8.) For the following reasons, the Court grants the motion as to Allied and denies the motion as to SIRVA.

**BACKGROUND**

On May 21, 2008, Plaintiffs filed a complaint in Arizona Superior Court asserting claims against both Allied, a motor carrier, and SIRVA, its parent company. (Dkt. # 1 Ex. 1.) The Complaint alleged breach of contract against Allied (count one), as well as negligent misrepresentation (count two), consumer fraud (count three), and unjust enrichment (count four) against both Allied and SIRVA. (*Id.*) These allegations stemmed from services Defendants rendered in transporting Plaintiffs' household goods from Texas to Arizona. (*See id.*) Defendants removed the case to this Court on July 1, 2008, pursuant to 28 U.S.C. §§

1441 (2006) and 1445(b) (2006). Defendants filed their Motion on Dismiss on July 9, 2008. (Dkt. # 8.)

## DISCUSSION

### I.     Legal Standard

To survive a dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise the right of relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216 (3d ed. 2004)). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 127 S. Ct. at 1974).

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). In addition, the Court must assume that all general allegations "embrace whatever specific facts might be necessary to support them." *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994). Although "a complaint need not contain detailed factual allegations," *Clemens*, 534 F.3d at 1022, the Court will not assume that the plaintiff can prove facts different from those alleged in the complaint, *see Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1035 (9th Cir. 2005). Similarly, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).

### II.    Analysis

**A.     Allied**

Defendant Allied argues that all of Plaintiffs' claims are preempted by 49 U.S.C. § 14706 (2007) (commonly known as the Carmack Amendment to the Interstate Commerce Act), which provides for suit against interstate carriers. (Dkt. # 8 at 2-9.) Plaintiffs concede, and the Court agrees, that their claims are preempted as to Defendant Allied. (Dkt. # 13 at 3 n.1.) Therefore, the Court concludes that Plaintiffs' claims against Allied are preempted by the Carmack Amendment.

Plaintiffs contend, however, that the Court should not grant the motion to dismiss as to Allied because the Complaint "alleged enough facts to establish the three elements of a *prima facie* claim under the Carmack Amendment." (Dkt. # 13 at 3.) The elements to which Plaintiffs refer are: (1) the carrier's receipt of the goods in good order and condition, (2) the shipment's failure to arrive at its destination or its arrival in a damaged condition, and (3) the amount of the loss. *See Mo. Pac. R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 138 (1964). However, while the Complaint does allege that the goods arrived in a damaged condition (Dkt. # 1 Ex. 1 at 3 ¶ 21-22), and does allege the amount of loss (*see* Dkt. # 1 Ex. 1 at 6 ¶ 48), the Complaint does not provide that the goods were delivered to the carrier in good order and condition.[1] Therefore, Defendants' motion to dismiss is granted as to Defendant Allied.[2]

Plaintiffs have requested leave to amend their Complaint to correct its deficiencies (Dkt. # 13 at 5-6), and Defendants do not oppose that request (*see* Dkt. # 14 at 3). Plaintiffs are therefore granted leave to amend the Complaint.

---

[1] Plaintiffs argue that the Complaint, by alleging that Plaintiffs requested "experienced movers," necessarily made the allegation that Allied received Plaintiffs' goods in good order and condition. (Dkt. # 13 at 4.) Although the Court is mindful that all general allegations "embrace whatever specific facts might be necessary to support them," *Peloza*, 37 F.3d at 521, it does not logically follow that goods are given to a carrier in good order and condition simply because a party requested experienced movers.

[2] At oral argument, the parties discussed whether there was a proper bill of lading in this case sufficient to invoke the Carmack Amendment. Because the issue was not briefed, the Court will not consider it in this order.

**B.     SIRVA**

Defendant SIRVA argues that because it is merely Allied's parent company, and not itself a "carrier," it cannot be held liable. To the extent that SIRVA is arguing that it cannot be held liable for any Carmack Amendment claim against Allied absent any allegation of alter ego liability, the Court agrees – but as best the Court can determine, Plaintiffs are asserting state law claims against SIRVA for its *own* acts that are independent of Allied's alleged liability. While count one of the Complaint only alleges a cause of action against Allied, counts two, three, and four allege claims against both Allied and SIRVA. The Complaint states in those counts that "Defendants Allied Van Lines *and* Sirva, Inc., intentionally and deliberately made false and untrue statements" resulting in consumer fraud, that "*Defendants* to this action misrepresented the nature of the transaction," that "*Defendants* to this action failed to disclose material facts," and that "*Defendants* damaged and lost Plaintiffs' property." (Dkt. # 1 Ex. 1 at 4-6 (emphases added).) Thus, the mere fact that alter ego liability has not been pled does not dispose of SIRVA as a party.

To the extent that SIRVA is arguing that the independent claims for its individual acts are preempted simply because it is not a carrier, the Court disagrees. That argument presents the question of whether the Carmack Amendment's preemptive effect makes suit against the carrier the sole remedy for damages stemming from an interstate shipment of goods, or whether the Carmack Amendment, while preempting suits against the carrier, nevertheless still permits suit against non-carrier entities to the extent that they are liable for such damages. Neither party provides any authority on this point, other than to cite the language of the statute, which itself provides only limited direction.

The Carmack Amendment states that common carriers "are liable to the person entitled to recover," and that the liability to be imposed "is for the actual loss or injury to the property *caused by* (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported [under certain circumstances]." 49 U.S.C. § 14706(a)(1) (emphasis added). This language suggests that the Carmack Amendment only preempts claims for damage *caused by* the carrier, and does not preclude

1  suit against non-carrier entities to the extent that they are liable under other law. That
2  interpretation is bolstered by the presence of a savings clause to the Carmack Amendment,
3  which provides that "[e]xcept as otherwise provided in this part, the remedies provided under
4  this part are in addition to remedies existing under another law or common law." 49 U.S.C.
5  § 15103 (2007). Thus, the Carmack Amendment was not intended to displace civil actions
6  against non-carrier entities to the extent that those entities may be otherwise liable.

7  In the case establishing the Carmack Amendment's preemptive effect, the United
8  States Supreme Court noted that "[a]lmost every detail of the subject is covered so
9  completely that there can be no rational doubt but that Congress intended to take possession
10 of the subject, and supersede all state regulation with reference to it." *Adams Express Co.*
11 *v. Croninger*, 226 U.S. 491, 505-06 (1913). The Supreme Court made that statement,
12 however, in explaining that the Carmack Amendment "embraces the subject of the liability
13 of the *carrier*," *id.* at 505 (emphasis added), and has elsewhere explained that the Carmack
14 Amendment covers "an action to recover *from a carrier* for damage to a shipment," *Mo.*
15 *Pac.*, 377 U.S. at 138 (emphasis added). These statements imply that the Supreme Court did
16 not intend to discuss actions against non-carrier entities.

17 At least one district court case has seized upon this distinction and explicitly held that
18 because the Carmack Amendment is concerned predominantly with the liability of carriers,
19 it does not preempt all actions arising out of the interstate shipment of goods. *Commercial*
20 *Union Ins. Co. v. Forward Air, Inc.*, 50 F. Supp. 2d 255, 257-59 (S.D.N.Y. 1999) (holding
21 that a property broker, which arranged for shipping but did not act as a carrier, could be held
22 liable under state or federal common law given the existence of the savings clause and the
23 focus of precedent on carrier liability); *see also Custom Cartage, Inc. v. Motorola, Inc.*, No.
24 98-C-5182, 1999 WL 89563, at *3 (N.D. Ill. Feb. 16, 1999) (holding that the Carmack
25 Amendment's silence as to the liability of non-carrier entities "does not mean that the
26 Carmack Amendment grants entities which arrange for the transportation of goods absolute
27 immunity for breach of contract or tort actions arising out of the interstate shipment of
28 goods"); *cf. Goliger Trading Co. of N.Y. v. Chicago & Nw. Ry. Co.*, 184 F.2d 876, 880 (7th

1 Cir. 1950) ("[T]he liability of a connecting carrier has not been changed by the Carmack
2 Amendment but that such carrier may be liable under the common law but only for its own
3 negligence.").[3]

4 The Court agrees with *Commercial Union*'s conclusion that the Carmack Amendment
5 was not intended to preempt all actions against non-carrier entities arising out of the
6 interstate shipment of goods simply because a statutory cause of action is also available
7 against the carrier. *See* 50 F. Supp. 2d at 257-59. The presence of a savings clause
8 demonstrates that some claims were intended to survive implementation of the Carmack
9 Amendment. *See* 49 U.S.C. § 15103 ("[T]he remedies provided under this part are *in
10 addition to* remedies existing under another law or common law.") (emphasis added).
11 Supreme Court decisions have emphasized that the subject of the Carmack Amendment is
12 carrier liability, and those decisions do not dictate that non-carrier liability is foreclosed. *See
13 Adams Express*, 226 U.S. at 505 (noting that the Carmack Amendment "embraces the subject
14 of the liability of the *carrier*") (emphasis added); *Mo. Pac.*, 377 U.S. at 138 (applying the
15 Carmack Amendment in the context of "an action to recover *from a carrier* for damage to
16 a shipment") (emphasis added).

---

[3]Other courts, while not evaluating the issue on quite the same footing, have recognized the possibility of a parent's company's liability for damages occurring in interstate shipping. *Compare Am. Rock Salt Co. v. Norfolk S. Corp.*, 180 F. Supp. 2d 420, 423-24 (W.D.N.Y. 2001) (holding that a party contracting for carriage with a subsidiary corporation could maintain suit against a carrier's parent corporation, even though the parent was not a signatory to the contract, because the complaint alleged that both the parent and the subsidiary breached their obligations and were involved in the underlying events), *with First Nat. Bank & Trust Co. of Newtown v. Consol. Freightways*, 797 F. Supp. 1262, 1268 (E.D. Pa. 1992) (holding that liability should run against the subsidiary carrier only, and not against its parent corporations, because there was insufficient evidence of their liability); *cf. Altadis USA, Inc. v. NPR, Inc.*, 344 F. Supp. 2d 1349, 1355 (M.D. Fla. 2004) (refusing, after a default judgment was entered against both a carrier and its parent corporation for the loss of goods in interstate shipping, to enter judgment against the carrier's insurance company under the theory that the insurer had paid the "wrong party" by paying the carrier's parent company rather than the subsidiary carrier itself).

The Ninth Circuit's descriptions of the Carmack Amendment do not suggest that the Carmack Amendment forecloses all non-carrier liability. *See White v. Mayflower Transit, L.L.C.*, 543 F.3d 581, 584 (9th Cir. 2008) ("The Carmack Amendment constitutes a complete defense to common law claims *against interstate carriers* for negligence, fraud and conversion, even though these claims may not be completely preempted.") (emphasis added); *Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 686 n.2 (9th Cir. 2007) ("The Carmack Amendment limits *a carrier's* liability under an interstate bill of lading to the actual loss or injury to the property caused by the carrier.") (emphasis added and internal quotations omitted); *Campbell v. Allied Van Lines, Inc.*, 410 F.3d 618, 620 (9th Cir. 2005) ("The Carmack Amendment preempts many state and common law claims *against carriers* in an effort to create a national scheme of carrier liability for goods damages or lost during interstate shipment.") (emphasis added and internal quotations omitted); *Hughes Aircraft Co. v. N. Am. Van Lines, Inc.*, 970 F.2d 609, 611 (9th Cir. 1992) ("The Carmack Amendment subjects *a motor carrier* transporting cargo in interstate commerce to absolute liability for actual loss or injury to property.") (emphasis added and internal citation and quotations omitted); *Contempo Metal Furniture Co. of Cal. v. E. Tex. Motor Freight*, 661 F.2d 761, 764 (9th Cir. 1981) ("The Carmack Amendment to the Interstate Commerce Act makes a carrier covered by the Act liable for damages *it causes* to property it transports in the amount of the actual loss or injury to the property.") (emphasis added internal quotations omitted).

The purpose of the Carmack Amendment also weighs against dismissing all claims against SIRVA simply because it is not a carrier. To hold that suit can be maintained against carriers *only* would impose absolute liability on carriers while granting non-carrier entities de facto immunity for all torts they commit in effecting interstate shipping agreements. There is no indication that the Carmack Amendment was intended to apply so indiscriminately. *See Mo. Pac.*, 377 U.S. at 137 (stating that a carrier is "not an absolute insurer" under the Carmack Amendment); *F.J. McCarty Co. v. S. Pac. Co.*, 428 F.2d 690, 693 (9th Cir. 1970) (holding that under the Carmack Amendment a carrier's position "is not that of an insurer or guarantor"). Rather, "[t]he purpose of the Carmack Amendment was to

relieve shippers of the burden of searching out a *particular negligent carrier from among the often numerous carriers* handling an interstate shipment of goods." *Reider v. Thompson*, 339 U.S. 113, 119 (1950) (emphasis added). Because the purpose of the Carmack Amendment was to clarify for shippers which carrier among many could be sued, and not to establish carrier liability as the sole method of recovery for damages that occur in interstate shipping, the Carmack Amendment should not be interpreted to grant all non-carrier entities absolute immunity for the torts they commit during the interstate shipment of goods.[4]

For these reasons, the Court concludes that the mere fact that SIRVA is not a carrier does not mean that any independent claims Plaintiffs may have against SIRVA are foreclosed. Because that is the only ground on which SIRVA bases its motion to dismiss, that motion must be denied as to defendant SIRVA.[5]

---

[4] It is important to note that the savings clause was "only intended to continue in existence such other rights or remedies . . . not inconsistent with the rules and regulations prescribed by the provisions of [the Carmack Amendment]." *Adams Express*, 226 U.S. at 507. Thus, any claims maintained outside of the Carmack Amendment cannot be inconsistent with its statutory scheme. The parties have neither argued this point nor sought to delineate the precise contours of the state law claims independently asserted against SIRVA. Therefore, the Court will not determine whether any of these independent claims are so closely related to Plaintiffs' compensation for damage to the property shipped that such claims are inconsistent with the Carmack Amendment's scheme and thereby preempted.

[5] At oral argument, the parties discussed whether SIRVA acted as the agent of Allied, and therefore whether the claims against it are preempted by the Carmack Amendment. Because the issue was not briefed, and may involve issues of fact, the Court will not consider it in this order.

# CONCLUSION

Plaintiffs' claims against Allied are conceded to be preempted, and because the Complaint does not state a cause of action under the Carmack Amendment, the claims against Allied must be dismissed with leave to amend. To the extent that Plaintiffs' Complaint states claims against SIRVA independent of those asserted against Allied, those claims are not inherently foreclosed simply because SIRVA is not a carrier.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Dkt. # 8) is **GRANTED IN PART** and **DENIED IN PART**.

DATED this 15th day of December, 2008.

G. Murray Snow
United States District Judge